FILED
LODGED
RECEIVED



MAY 14 2020

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# SEATTLE DIVISION

| | | |
|---|---|---|
| WASEEM DAKER, | * | Case No. |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | |
| | * | |
| REDFIN CORPORATION, INC., | * | 2:20-cv-000752-BAT |
| A State of Washington Corporation, | * | |
| KELLEY SWEET, | * | |
| SHEENA ANWER, | * | |
| MOHAMMED KASHIF ANWER, | * | **Plaintiff's** |
| | * | **Original** |
| Defendant | * | **Complaint** |

## I. INTRODUCTION

1. COMES NOW WASEEM DAKER, Plaintiff above-styled, and brings this action against Defendants pursuant to 28 USC § 1332 for torts committed under Georgia state law as well as breach of contract committed under Georgia state law.

## II. JURISDICTION AND VENUE

2. This court has original jurisdiction pursuant to 28 USC §§ 1332.

3. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 USC §§ 2201, 2202.

4. Venue is proper in this district pursuant to 28 USC 1391(b)(1) because diversity is satisfied, and at least one Defendant, Redfin Corporation, is a domiciliary of the State of Washington.

## III. PARTIES

### A. Plaintiff

5. Plaintiff is Waseem Daker. Plaintiff is a domiciliary of the State of Florida, previously domiciled in Florida, and intends to domicile in Florida upon his release from confinement. Ellingburg v. Connett, 457 F2d 240, 241 (5th.Cir.1972); Williams v. Bowman, 157 FSupp2d 1103, 1106 (N.D.Cal.2001); Bontkowski v. U.S., 2005 WL 2756029, *2 (M.D.Fla.2005) (unpublished), and cases cited; Flanagan v. Shively, 783 FSupp 922, 935-36 (M.D.Pa.1992) (inmate is not a resident of the district in which he is incarcerated absent evidence of his intent to remain there upon discharge), *affirmed*, 980 F2d 722 (3rd.Cir.1992). Plaintiff's address of domiciliary in Florida is: Palm Coast, FL 32164. Plaintiff is currently incarcerated in the State of Georgia. Plaintiff may be served in his place of incarceration at: #901373 Valdosta State Prison, P.O. Box 5368, Valdosta, Lowndes County, GA 31603.

## B. Defendants

6. Defendant REDFIN CORPORATION (hereinafter "Redfin") is a domiciliary of and corporation registered in the State of Washington. Defendant Redfin is sued for damages. Defendant Redfin may be served at: Redfin Corporation, 1099 Stewart, Suite 600, Seattle, WA 98101, phone (404) 800-3623, fax (678) 916-2127, agent phone (770) 312-7506, email sheena.anwer@redfin.com.

7. Sheena Anwer is a domiciliary of the State of Georgia and is Senior Agent and salaried employee of Redfin Corporation. Anwer can be reached at: Redfin, 5900 Windward Parkway, suite 120 Alpharetta, GA 30005, sheena.anwer@redfin.com Office: 404-800-3623, Cell:770-312-7506, Fax: 404-592-3300. She is also the wife of Defendant Mohammed Kashif Anwer.

8. Kelley Sweet is a domiciliary of the State of Georgia and is a broker and salaried employee of Redfin Corporation, and is Anwer's Team Manager and supervisor. Sweet can he

reached at: Redfin, 5900 Windward Parkway, suite 120 Alpharetta, GA 30005, Office: 404-800-3623, Cell:770-312-7506, Fax: 404-592-3300.

9. Mohammed Kashif Anwer is a domiciliary of the State of Georgia and is the husband of Defendant Sheena Anwer. He may be served at: kashif2202@icloud.com.

## IV. DEFINITIONS

10. For the purposes of this Complaint, the following terms are defined as referring to the following persons:

    A. Seller = Waseem Daker = Plaintiff

    B. Seller's Attorney in Fact or Power of Attorney ("POA") = Loretta Spencer Blatz

    C. Listing Broker = David Avery

    D. Listing Agent = Billy Ogilvie

    E. Buyer = Mohammed Kashif Anwer

    F. Selling Agent = Sheena Anwer (Buyer's Wife)

    G. Earnest Money Holder = David Avery

    H. Selling Broker = Kelley Sweet

## V. STATEMENT OF FACTS

11. On April 24, 2018, Seller signed Listing Agreement with Listing Broker.

12. On April 29, 2018, Buyer submitted first offer with purchase price at $460,000 and zero commission to Selling Agent.

13. On May 2, 2018, Buyer, through Selling Agent, submitted second offer specifying as follows:

    A. Purchase Price is $470,000.

    B. Seller's Contribution to Closing Costs is $3,000.

8

      C. Earnest Money is $1,500.

      D. Closing date is June 11, 2018.

      E. Contract specifies that "Selling agent is related to buyer." Specifically, Selling agent is the buyer's wife.

      F. Special stipulations are as follows:

          1) "Seller shall install new stainless steel dishwasher of compatible brand to appliances in kitchen and provide receipt within 3 days of appraisal.

          2) "Seller shall repair or replace current hvac/heating/ac and furnance [sic] to properly functioning condition and provide receipt within 3 days of appraisal.

          3) "Seller shall replace rusty thermal expansion tank on water heater to new, functioning non rusted unit receipt to be provided 5 days prior to close.

          4) "Seller shall clean and remediate any pest roach,or termite infestation and provide termite letter within 7 days of binding contract.

Seller agreed, and contract was deemed binding.

    14. On May 3, 2018, Selling agent Sheena Anwer contacted current agent stating that *two days after Listing Agent listed listing*, she (Sheena) contacted Seller's former listing agent Janeen Rumanes and learned that Seller was incarcerated and that transaction was being done by Seller's POA. Rumanes also falsely stated that there are problems with the title, which was false. Selling agent Sheena Anwer contacted Seller's current listing agent Billy Ogilvie who confirmed that

Seller was incarcerated and that transaction will be done by Seller's POA at closing, but clarified that there are no problems with the title, which was false. Significantly, Buyer did NOT request to terminate on this basis. (See May 3, 2018 Email from Billy Ogilvie to David Avery, Re: Broker Assistance needed.) In addition, said email shows that Buyer was well aware of Seller's circumstances and POA well even before submitting first (April 29, 2018) offer or second (May 2, 2018) offer.

15. On May 7, 2018, Seller completed terms of agreement regarding dishwasher installation ($450) and submitted receipt.

16. On May 8, 2018, Buyer requested Amendment #1 to Contract requesting an additional $2,300 in closing costs for a total of $5,300. Seller agrees.

17. On May 9, 2018, Seller completed terms of agreement regarding HVAC Repair ($495) and submitted receipt.

18. On May 9, 2018, seven(7)-day due diligence period expired. Significantly, despite fact that Buyer was already made aware that Seller was incarcerated and that transaction was being handled by Seller's POA at closing, Buyer did NOT request to terminate on this (or any other) basis.

19. On May 9-10, 2018, Selling Agent spoke with Ross who had also informed her that transaction Seller was incarcerated and that transaction was being done by Seller's POA at closing.

20. On May 10, 2018, Both parties completed Amendment #2 changing closing attorney from Christian Ross to BMW Law Group.

21. On May 16, 2018, Seller completed terms of agreement regarding pest control ($150) and submitted receipts.

22. On May 16, 2018, Seller completed terms of agreement regarding water heater extender ($360) and submitted receipts.

23. On May 16, 2018, Closing Attorney Bobby Bross spoke with Seller.

24. On May 16, 2018, Buyer submitted proposed Amendment #3[1] requesting that: "Seller agrees to replace the following & provide recipts [sic] within 7 days prior to closing

    1)Wooden portion of front door;

    2)Missing carpet in main floor bedroom closet;

    3)Missing carpet in basement bedroom."

Seller did NOT agree to amendment. After appraisal came back at $480,000, buyer first requested another $10,000 off price because she claimed that it appraised at $480,000, whereas she expected it to appraise at $490,000K or more, citing to an MLS comment that a previous appraisal under a previous contract with the prior listing agent was appraised at $490,000. Seller refused. Buyer then requested additional repairs; Seller refused. Buyer then requested 3% toward closing costs; Seller refused. Then, after Seller refused to amend contract, Buyer's Wife (Selling Agent) unethically threatened to ride out contract until June 11, 2018 closing date and then walk away from contract, thereby threatening to keep home under contract and off market for another three(3) weeks during the prime of the market.

25. On May 20, 2018, Eighteen(18)-day financing contingency period expired. Buyer did not terminate in compliance with the financing contingency to terminate.

---

[1] Although Buyer's Proposed Amendment numbered itself as "Amendment 2," if Seller had agreed to it, it would have been Amendment #3, not #2. Amendment #2 dated May 10, 2018 changed the closing attorney from Christian Ross to BMW Law Group.

26. On May 22, 2018, Buyer submitted proposed Mutual Termination requesting that: "Earnest money to be disbursed to Buyer Mohammed K. Anwer." Seller did NOT agree to Termination.

27. On May 23, 2018, Selling Agent sent Seller's POA Blatz an email falsely stating that "The loan was denied within finance contingency timeframes."

28. On May 23, 2018, Twenty-one(21)-day appraisal contingency period expired. Buyer did NOT meet the terms of the appraisal contingency to terminate the contract, as the appraisal was for $480,000.00.

29. On May 25, 2018, Sweet notified Avery that she is running the situation by Redfin's legal team.

30. On May 25, 2018, Selling Agent sent Listing Broker an email stating:

> On Fri, May 25, 2018 at 3:32 PM, Sheena Anwer Sheena.anwer@redfin.com> wrote:
> Hi David,
> I wanted to give you an update as to where Buyer stands at the moment.
> His intentions were to buy the home until he was notified by his lender that due to extremely high Insurance premiums the loan was not going to work per the original terms. He is still trying to work with his lender for an alternate solution. Another possibility would be a 3% Seller contribution towards closing costs.
> Please reach to the seller and see if he is willing to do this so we can sign off, proceed with the closing.

This email directly contradicts Selling Agent's May 23, 2018, email to Seller's POA Blatz an email falsely stating that "The loan was denied within finance contingency timeframes."

31. On May 30, 2018, Selling Agent Sheena Anwer and her broker Kelley Sweet informed Listing Broker that Redfin's legal team advised Buyer to terminate the contract.

32. On May 30, 2018, Buyer sent Listing Broker a Unilateral Termination requesting that: "Earnest money to be disbursed to Buyer Mohammed K. Anwer," and stating that:

12

> c. the following default under the Agreement by Seller:
> Failure to disclose transaction handled by POA within Buyer Due Diligence time.
> d. other lawful reason: Contract not valid due to seller never signed, unverified IP address.

Both reasons are meritless. In addition, Buyer cannot show any prejudice, as buyer was made aware of this information even before submitting offer, and certainly no later by May 3, 2018—well within due diligence period—as was witnessed by Janeen Rumanes, Christian Ross, Billy Ogilvie, and David Avery, but still chose not to terminate within due diligence period. Fourth, Buyer cannot show any prejudice, as buyer still proceeded with May 6, 2018 Amendment #1 and May 10, 2018 Amendment #2, but failed to raise it as an issue in either Amendment.

33. More significantly, Buyer and Buyer's Wife's (Selling Agent's) actions and emails show that both cited reasons are disingenuous, fraudulent, and pretextual, and that the buyer's real reason for terminating was that Buyer's Wife (Selling Agent) were unhappy that it did not appraise for more than it did.

> A. After appraisal came back at $480,000, Buyer's Wife (Selling Agent) first requested another $10,000 off price because she claimed that it appraised at $480,000, whereas she expected it to appraise at $490,000 or more, citing to an MLS comment that a previous appraisal under a previous contract with the prior listing agent was appraised at $490,000. Seller refused.
>
> B. Buyer then requested additional repairs; Seller refused. Buyer then requested 3% toward closing costs; Seller refused.
>
> C. Then, after Seller refused to amend contract, Buyer's wife (Selling Agent) unethically threatened to ride out contract until June 11, 2018 closing date

and then walk away from contract, thereby threatening to keep home under contract and off market for another three(3) weeks.

34. Second, after Seller refused to agree to Mutual Termination disbursing earnest money back to Buyer, Buyer's wife (Selling Agent) again unethically threatened to ride out contract until June 11, 2018 closing date and then walk away from contract, thereby threatening to keep home under contract and off market for another three(3) weeks.

35. Furthermore, Buyer and Selling Agent (husband and wife) have behaved fraudulently by providing false and misleading reasons to terminate such as Selling Agent's May email to Loretta Spencer Blatz stating that "The loan was denied within finance contingency timeframes." This was now known to be false.

36. The Buyer was not allowed to shop around for reasons to terminate, until he finds one that he thinks will stick. Here, Buyer and his Agent/Wife have repeatedly claimed false reasons for wanting to terminate, including, house not appraising for as much as she wanted, being denied financing, and simply wanting more repairs or better price or more seller contribution to closing costs.

37. Lastly, Seller has suffered actual damages as a result of Buyer's default under the contract. First, Seller has spent $1455 in out-of-pocket expenses, making the repairs that Buyer requested, including dishwasher purchase and installation ($450), HVAC ($495), thermal expansion tank on water heater ($360, and pest control ($150). These are out-of-pocket expenses that Seller incurred at Buyer's request, and which were not required to sell the home, and which other buyers have not requested.

38. Second, Seller has had to pay an additional $1200 in mortgage interest per month for the three(3) months of June, July, and August 2018, or $3600, additional interest which he would not have had to pay had he sold home to another buyer during that same time period.

39. Third, as a result of said contract, Seller kept home off the market as under contract from May 2-30, 2018, during the prime of the market and which kept Seller from being able to sell the home to other interested buyers during that time period. By the time Buyer sent his Unilateral Termination of Contract, other interested buyers had signed contacts on other homes

40. Redfin, Sheena Anwer, and Kelley Sweet conspired to delay the termination of the contract so as to keep Seller's home under contract and off the market and to prevent it from competing with Redfin-listed comparable homes in the area.

41. As a result, Seller was unable to sell home until August 27, 2018, when he sold it for $464,900.00, with $3500.00 Seller's contribution to closing costs, $480.00 Seller's contribution to home warranty, and approximately $25,000.00 for repairs or home improvements as incentives for buyers.

42. During this time, both Plaintiff and Blatz repeatedly complained to Redfin's customer service and complaint departments about Sheena Anwer's unethical and dishonest behavior. No person from Redfin ever responded to Plaintiff's and Blatz's complaints.

43. Thus, Seller has suffered actual damages of $5600 loss in sale price plus $30,055.00 in other expense.

44. Seller also suffered emotional distress including depression and anxiety as a result of all Defendants' conduct.

## VI. STATEMENT OF CLAIMS

45. Plaintiff claims that Defendants Redfin, Selling Agent Sheena Anwer, and Selling Broker Kelley Sweet committed the tort of tortious interference with contract Long v. A.L. Williams & Assocs., Inc., 172 Ga. App. 564, 566, 323 S.E.2d 868, 870 (1984) (citing O.C.G.A. § 9-3-31).

46. Plaintiff claims that Defendants Redfin, Selling Agent Sheena Anwer, and Selling Broker Kelley Sweet committed the tort of tortious inducement of breach of contract by inducing Anwer to breach his contract with Plaintiff.

47. Plaintiff claims that Defendants Redfin, Selling Agent Sheena Anwer, and Selling Broker Kelley Sweet committed the tort of intentional infliction of emotional distress by threatening to ride out contract until June 11, 2018 closing date and then walk away from contract, thereby threatening to keep home under contract and off market for another three(3) weeks. O.C.G.A. § 9-3-33. Fleming v. Lee Engineering & Construction Co., 184 GaApp. 275, 276, 361 S.E.2d 258 (1987).

48. Plaintiff claims that Defendants Redfin, Selling Agent Sheena Anwer, and Selling Broker Kelley Sweet committed the tort of intentional infliction of emotional distress by delaying termination of the contract, after they already knew they intended to terminate, from May 16, 2018 until May 30, 2018, in order to keep Seller's home under contract and off the market and to prevent it from competing with Redfin-listed comparable homes in the area.

49. Plaintiff claims that Defendant Buyer Mohammed Kashif Anwer committed breach of contract by unilaterally terminating his contract with Plaintiff.

50. Plaintiff claims that Defendant Buyer Mohammed Kashif Anwer committed breach of contract by disputing and failing to concede the earnest money to Seller.

51. Plaintiff claims that Redfin engaged in unethical hiring practices by hiring Selling Agent Sheena Anwer, and Selling Broker Kelley Sweet and by failing to terminate their employment after both Seller and Blatz repeatedly complained to Redfin about their unethical conduct.

## VII. RELIEF SOUGHT

52. Plaintiff seeks declaratory judgments.

53. Plaintiff seeks prospective, equitable, and injunctive relief.

54. Plaintiff seeks nominal damages.

55. Plaintiff seeks compensatory damages of $35,655.00 against Defendants Redfin, Sheena Anwer, and Kelley Sweet, for $5600 loss in sale price plus $30,055.00 in other expenses, caused by Defendants' tortious interference with contract and inducing breach of contract.

56. Plaintiff seeks compensatory damages of $35,655.00 against Defendant Buyer Mohammed Kashif Anwer, for breach of contract.

57. Plaintiff seeks compensatory damages of $100,000.00 against Defendants Redfin,, Sheena Anwer, and Kelley Sweet, for intentional infliction of emotional distress.

58. Plaintiff seeks punitive damages of $250,000.00 against Defendants Redfin,, Sheena Anwer, and Kelley Sweet.

59. Plaintiff seeks costs of prosecuting this action.

60. Plaintiff seeks other such relief that the court deems necessary or appropriate.

This __5__ Day of __MAY__, 2020.

Respectfully Submitted,

**Waseem Daker**
Plaintiff, pro se

ID#901373

Valdosta State Prison
P.O. Box 5368
Valdosta, Ga 31603

## DECLARATION OF WASEEM DAKER

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the above and foregoing are true and correct to the best of my knowledge.

This __5__ Day of __May__, 2020.

**Waseem Daker**



761373
MCCOOL S.P.
P.O. BOX 5360
VALDOSTA, GA 31603

WILLIAM M. MCCOOL
U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
700 STEWART AVE
SUITE 2310
SEATTLE WA 98101

Valdosta State Prison
P.O. B...
Valdosta, GA 31603

"The enclosed letter was processed through
special...
to you...
operat...
raises a q...
this faci...
may w... ...if
further inform... ...ce for
the writer encl... ...s, please
forwarding to another add... ...e above
return the enclosure to the above
addressee."